**FILED**
2020 Aug-10  PM 04:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

Pro Se 14 (Rev. 09/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA

JAMES WILLIAM SALES
*Plaintiff*

*(Write your full name. No more than one plaintiff may be named in a complaint.)*

-v-

Case No. _____
  *(to be filled in by the Clerk's Office)*

 SEE Attached
*Defendant(s)*

*(Write the full name of each defendant who is being sued. If the names of all of the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here. Your complaint may be brought in this court only if one or more of the named defendants is located within this district.)*

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Prisoner Complaint)

NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee of $400.00 or an Application to Proceed *In Forma Pauperis.*

Mail the original complaint and the filing fee of $400.00 or an Application to Proceed *In Forma Pauperis* to the Clerk of the United States District Court for the Northern District of Alabama, Room 140, Hugo L. Black U.S. Courthouse, 1729 5th Avenue North, Birmingham, Alabama 35203-2195.

1

## I.    The Parties to this Complaint

### A.    The Plaintiff

Provide the information below for the plaintiff named in the complaint.

Name — JAMES WilliAM SAles

All other names by which
you have been known: — 278544

ID Number

Current Institution — William E. DonAldSon

Address — 100 WArrior LAne
Bessemer      Al      35023
<span> City      State      Zip Code</span>

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed

Defendant No. 1

Name — ~~CARLA~~ ~~JAMES~~ G. Givens

Job or Title *(if known)* — WArden 3 / SupeRintendent

Shield Number

Employer — AlAbAMA depArtment of StAte correction

Address — 100 WArrior lAne
Bessemer      Al      35023
<span> City      State      Zip Code</span>

☑ Individual Capacity      ☑ Official Capacity

Defendant No. 2

Name — K. Petterson

Job or Title *(if known)* — WArden-2 / SupeRintendent

Shield Number

Employer — StAte of-AlAbAmA correctons

Address — ~~WArden~~ 100 WArrior lAne
Bessemer      Al      35023
<span> City      State      Zip Code</span>

☐ Individual Capacity      ☐ Official Capacity

Defendant No. 3

| | |
|---|---|
| Name | C. SAnders |
| Job or Title *(if known)* | Leutinant |
| Shield Number | |
| Employer | State |
| Address | 100 WArrior lAne |
| | Bessemer        Al        35023 |
| | *City*        *State*        *Zip Code* |

☑ Individual Capacity   ☑ Official Capacity

Defendant No. 4

| | |
|---|---|
| Name | Corben .D. Tunstall |
| Job or Title *(if known)* | Officer |
| Shield Number | |
| Employer | State |
| Address | 100 WArrior lAne |
| | Bessemer        Al        35023 |
| | *City*        *State*        *Zip Code* |

☑ Individual Capacity   ☑ Official Capacity

## II.   Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal law]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

A.   Are you bringing suit against *(check all that apply)*;

☐   Federal officials (a *Bivens* claim)

☐   State or local officials (a § 1983 claim)

B.   Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities, secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?        8th   And  14th

3

C.  Plaintiffs suing under *Bivens* may only recover for violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

_____

_____

D.  Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

<u>                See   Attached                </u>

## III.  Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply):*

☐  Pretrial Detainee

☐  Civilly committed detainee

☐  Immigration detainee

☐  Convicted and sentenced state prisoner

☐  Convicted and sentenced federal prisoner

☐  Other _____
     *(explain)*

## IV.  Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.  If the events giving rise to your claim arose outside an institution, describe where and when they arose.

_____

_____

B.  If the events giving rise to your claim arose in an institution, describe where and when they arose.

<u>  See Attached                                   </u>

4

C. What date and approximate time did the events giving rise to your claim(s) occur?

On April 9th 2020 around 12:30 or 1:00 PM

D. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?*

I was Punched in the face many time by officers Corbin D. Tunstall and C. Sanders. All this was seen by a Wexford Health employee who reported at all this to her supervisors

V. **Injuries**

If you sustained injuries related to the events alleged above, describe your injuries in detail.

My Jaw my 95 offlined and I have back problems due to me being beaten by officers

VI. **Relief**

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

I want 650 Thousand dollars in Punitive damages for my being beaten in hand cuffs and 250 Thousand in compensatory damages for my Pain and mental suffering and Physical suffering So in All I want 900 Thousand dollars

and charges Pressed on Both officers for Beating me this will give me Relief in this my Claim.

**VII.  Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail. prison. or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A.  Did your claim(s) arise while you were confined in a jail. prison. or other correctional facility?

☑ Yes

☐ No

If yes. name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

WilliAm . E . donAldson

B.  Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☐ Yes

☑ No

☐ Do Not Know

C.  Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover ·some or. all of your claims?

☐ Yes

☑ No

☐ Do Not Know

If yes. which claim(s)?

_____

_____

6

D. Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☑ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☐ No

E. If you did file a grievance

1. Where did you file the grievance?

I wrote out A complAint from

2. What did you claim in your grievance?

♦ See AttAched

3. What was the result, if any?

there where None

4. What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

thAt 's AS fAr AS the Process gots in Prison

F.  If you did not file a grievance:

  I.  If there are any reasons why you did not file a grievance, state them here:

  _____

  2.  If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response. if any:

  _____

  3.  Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

  See Attached

  _____

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.  Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions. while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous. malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had any cases dismissed based on grounds that it was frivolous, malicious, or failed to state a claim upon which relief may be granted?

☐  Yes

☑  No

If yes, state which court dismissed your case(s), when this occurred, and attach a copy of the order(s) if possible.

_____

_____

_____

_____

8

A.  Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐  Yes

☑  No

B.  If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.  Parties to the previous lawsuit

Plaintiff(s) _____

Defendant(s) _____

2.  Court *(if federal court, name the district; if state court, name the county and State)*

_____

3.  Docket or index number

_____

4.  Name of Judge assigned to your case

_____

5.  Approximate date of filing lawsuit

_____

6.  Is the case still pending?

☐  Yes

☑  No

If no, give the approximate date of disposition. _____

7.  What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

_____

9

**IX.** **Certification and Closing**

Under Federal Rule of Civil-Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and ( 4) the complaint otherwise complies with the requirements of Rule 11.

**I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.**

**Printed Name of Plaintiff**  James William Sales

**Prison Identification #**  278544

**Prison Address**  100 Warrior Lane

Bessemer  Al  35023

|  City | State | Zip Code |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  8-2-2020
(Date)

Signature of Plaintiff

date: Aug-1-2020

(Attache to 1983 form/ statement of facts: Part II Section:D) Complaint form

This I write in case something else happens to me while I have this Legal suit going on officers that where And are at this prison And wardens for Alowing the employee's to make these kind of Actions Against me. At the time these event took ~~Plese~~ Place go As followed: Officers of the states correctional staff whom names are Corbin. D. Tunstall, LT. ~~Stes Ates~~ C. Sanders, Superintendents/~~orest~~ Warden 2-3  K. Petterson  , G. Givens ,

AS you MAY Already know On April 9th, of 2020 I was in cell/room 5-S ~~drns~~ dorm At the time of ~~event~~ events of this claim while/reson for being in S-dorm was I was on Suicide risk observation) in S-dorm cell/room 5 I fond A way to cut myself by making A knife out of A window And did cut myself

Next officer Corbin. D. Tunstall Came to the door of the cell/room I was in with two large cans of MASE I was then sprayed by this officer six times 3 from each can  then he walked out the dorm officer rogger came And Asked me

And I did. After that happend I was Place in handcuff with my hand behind my back once in cuff's I was taken out of the suicide cell/room And was being walked to the medical Health care unit by officer's sutten, And Roggers. (Now I know As you know that because they work togather it would be A good Idea to cheak there work relationship do to that fact they may Lie for each other)

Furthermore I'm wanting to show evrything so this Prison knows the truth of what happend to me At there Prison while I have been here As far As this) for A shower by way of walking through the RStU Hallway once I made it in the Hallway officer Corbin .D. Turstan walked out of ther cubical And told the other two officers hold him Right there they responded with hold up let me get Away form Around here befor yAll do anything I Asked what do you mean But the officers whom had taken me out of the cell/room walked

Out to the smoke Area between the RSTU ~~hall~~ HAllway And ~~the~~ the mental health Care unit once the officers whom had tAken me out of the cell/room where gone I WAS punched in the face repeatdly by officer Corbin D. Tunstall he ~~Also~~ Also open my eyes And sprayed me repeatdly do to me Already being in cuffs WAS this to keep me from seeing him or WAS this doneto me to cause more Physical injury? IS ~~this~~ this the employee StandArds Trained by Administration, And WAS he following ADministrative Regulation ~~on~~ number 208? for the understanding of employee's Rule's read 208

After this went on ~~for~~ from 12:45 to Around 1:00 I WAS then Pulled up off the floor of the RSTU Hall WAY And ~~officer~~ when I opened my eye's officer Trell WAS on my right And officer gain ~~o~~ WAS on my Left And officer Corbin D. Tunstall WAS infront of me yelling Now Nigga didn't I tell you to stop Playing with me

While he WAS yelling this. officer
Lt. C. SAnders WAlked in And SAid is thAt
him meAning me JAmes williAm SAles
278544 officer tunstAll SAid yeAh
thAts the dumb Ass right there Pointing
At me. officer Lt. SAnders WAlked up
to me And slAPed me in the fAce
then Punched me in the right eye
two times I then sAid you
Know you Just rebroke my JAW he
responded With So whAt niggA whAt cAn
you do About it

LAst A mentAl heAlth Observer NAmed
mrs. cAter WAS PlAced AS my observer At
the time the event in this my clAim
hAppend. WAS there in the smAll
sPace between the smoke AreA And
the RSTU hAll WAY And sAw me
being AssAulted And brutAly treAted
in the RSTU hAll WAY And rePorted
whAt she sAw to mrs. BoolK And mr. PAin
the superviser's Superviser's over
mentAl heAlth All these events
Above stAted hAppend On APril 9th, 2020

After the events of April 9th 2020
I was sexaly assulted by officer
Tunstall this this event happend on
April'14th 2020 While I was be
walk to my 10 day crisis risk follow up
Apointment it around 7:30 or 8:00 Am when
officers Officers Trell, gains, And Tunstall
walked in the dorm they did not say
Anything to me yet so when mrs. Trell the
officer of the State came to my door
I said good morning to her she said
do you what to go go to your followup
I said yes she then hand Cuffed men
behind my back Officers gains, and
Tunstall walked on the side of the dorm
With cell/room numbers 1-12 on the
bottom And 25-36 on top I was in
X-dorm At the the time these
events happend once I made it
down the stairs I had Trell behind me
And gain on my right And officer
Corbin .D. Tunstall on My left when
I had made it to the middle of
the floor Tunstall moved infront of
me and pulled my Penis out folded
my Penis over his cut down tool And

Said nigga I'll cut your dick head off
I reported this in the mental
Health care when I got there to
Mr. spincer And And the docter.

MAY 7th I was still in X-36 I
was told by the officers I had sick call
Apointment onee there I saw captain
Caldwell in the medical Health unit
So I said WhAt do I do About
what your officer has done to me
he responded with write INI
that ain't got nothing to do with
me. So I said I would And
he walked out then Inmates
Asked me whAt happend so I
said what had happend And officer
tunstall walked over to where I
was sitting Asked me whAt I had
Just said and the hole time I
had A mask on do to covert 19 out
break And I said whAt said was you
have Assaulted me two times so far
in two different different ways he
then pulled his Personal mase can out
And sprayed the hole can on me



State of Alabama
# Alabama Department of Corrections

**BOB RILEY**
GOVERNOR

301 S. Ripley Street
P. O. Box 301501
Montgomery, AL 36130

**DONAL CAMPBELL**
COMMISSIONER



Attached 1983

June 14, 2005

ADMINISTRATIVE REGULATION
NUMBER            208

OPR:  PERSONNEL

## EMPLOYEE STANDARDS OF CONDUCT AND DISCIPLINE

### I.    GENERAL

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes responsibilities, policies, and procedures concerning employee behavior/work performance and provides a guide to implement disciplinary action when necessary.

### II.   POLICY

It is the policy of ADOC that employees maintain the highest level of behavior and efficiency, reflect the best image of public service, and uphold with integrity the public confidence entrusted in them. If an employee's behavior or performance does not comply with these standards, progressive discipline shall be utilized to correct unsatisfactory work performance and employee misconduct.

### III.  DEFINITION(S) AND ACRONYM(S)

A.    Active Corrective Action:  A corrective action issued within the previous 12 month period.

B.    Appointing Authority:  ADOC Commissioner.

C.    Counseling Session:  An informal corrective tool used to advise, counsel, or coach an employee regarding undesirable behaviors in lieu of initiating formal disciplinary procedures.

D.    Discipline:  The imposition of sanctions for the purpose of correcting or changing undesirable behaviors.

E.    Dismissal:  A step in the formal progressive discipline process in which the employee is discharged from employment for unsatisfactory job performance or misconduct.

F.    Due Process:  For the purposes of this AR, affording an employee the opportunity to respond prior to imposing discipline. Depending on the level of discipline, this should include allowing the employee to provide written comments, rebuttal, or a due process hearing.

G.    Employee:  For the purpose of this regulation, any person employed by the ADOC as a full time, part-time, or temporary employee. All other persons such as contractors, vendors, and volunteers are also subject to the ADOC's Standards of Conduct and this regulation, and failure to adhere to these regulations may result in being removed and/or barred from an ADOC institution/division.

1 of 1

H.J     Employee 201 File: An employee's personnel file that is maintained at ADOC Personnel. The institution/division version shall be referred to as the Employee Personnel Institution/Division File.

I.J     Employee Institution/Division File: An employee's personnel file maintained at the institution/division.

J.      Family Member: For the purposes of this regulation, an employee's spouse, child, stepchild, grandchild, parent, grandparent, sibling, aunt, uncle, mother-in-law, father-in-law, brother-in-law, sister-in-law or any known relative.

K.      Formal Discipline: Includes the following steps of discipline: Warning, Written Reprimand, Suspension, Involuntary Demotion, or Dismissal.

L.      Hearing Officer: Wardens or other employees designated by the ADOC Commissioner.

M.      Inactive Corrective Action: A corrective action that was finalized/served on an employee more than 12 months prior to the action being contemplated.

N.      Informal Discipline: Counseling Session.

O.      Inmate: Any person committed to the custody of the ADOC to serve a state prison sentence.

P.      Involuntary Demotion: A step in the formal progressive discipline process in which the employee is assigned to a position in a lower classification for failure to satisfactorily meet the job expectations of a higher assigned classification.

Q.      Job Abandonment: Three (3) consecutive days of unexcused absences where the employee fails to call in or report for duty and there is no supervisory contact with the employee.

R.      Legal Counsel: For the purposes of this regulation, an attorney licensed to practice law in the State of Alabama or a person designated by the employee.

S.      Presenting (Charging) Official: Wardens/Division Directors, or designees, who charges an employee with a disciplinary infraction and subsequently presents the charge to a Hearing Officer or other appropriate person designated under this regulation.

T.      Progressive Discipline: The process of administering corrective actions in a step format that allows an employee an opportunity to change undesirable behavior.

U.      Sexual Misconduct: Any behavior or act of a sexual nature directed toward an employee, volunteer, visitor, inmate, or agency representative. This includes but is not limited to:

        1.      Acts or attempts to commit such acts as sexual assault, sexual abuse, sexual harassment, sexual contact, actions designated for the gratification of any party, conduct of a sexual nature or implication, obscenity and unreasonable invasion of privacy.

        2.      Conversations or correspondence, which suggests a romantic or sexual relationship between any parties mentioned above.

        3.      Any act of sexual conduct as described in Code of Alabama 1975, Section 14-11-30.

V.   Suspension: A step in the formal progressive discipline process that places the employee in an inactive work status without pay for a specific period of time.

W.   Tardy: Arriving at duty/work station after the start of assigned duty/shift starting time without prior supervisory approval. Employees more than seven (7) minutes late shall also be placed in leave (paid or unpaid) status.

X.   Unexcused Absence: Reporting to work later than two (2) hours after the start of assigned duty/shift time without prior supervisory approval.

Y.   Warning: A step in the formal progressive discipline process that admonishes undesirable behaviors.

Z.   Working days: For the purpose of this regulation in establishing timeframes for processing disciplinary actions, Monday through Friday, excluding state holidays.

AA.   Written Reprimand: A step in the formal progressive discipline process that censures undesirable behaviors.

## IV.   RESPONSIBILITIES

A.   The Commissioner shall:

1.   Ensure that ADOC employees are held accountable for their behavior in a fair and consistent manner.

2.   Through his/her duty as the appointing authority, act on recommendations for formal corrective actions at the level of Written Reprimand through Dismissal. The Commissioner may designate a Deputy Commissioner or Institutional Coordinator the authority to authorize a Written Reprimand.

B.   The Personnel Division Director shall be responsible for ensuring that:

1.   The standards of conduct and discipline policy for the ADOC is consistent with State Personnel policy and applicable employment laws.

2.   All corrective actions submitted by ADOC Wardens/Division Directors at the level of Written Reprimand through Dismissal are carried out in a timely, consistent, and fair manner.

C.   Wardens/Division Directors shall ensure that:

1.   All new employees are thoroughly orientated as to the content of this regulation, and that all ADOC employees under his/her supervision review this regulation at least once annually.

2.   The concept of progressive discipline is applied fairly, consistently, and in a timely manner.

3.   A copy of this regulation is posted on employee accessible bulletin board.

4.    Service in the capacity of hearing officer is provided as scheduled by the Personnel Division.

D.    The General Counsel is responsible for ensuring that ADOC disciplinary procedures comply with applicable laws and providing legal representation of the ADOC and its employees, when appropriate.

E.    It is the responsibility of all employees to adhere to the contents of this regulation.

## V.  PROCEDURES

A.    All ADOC employees shall adhere to the following standards:

1.    Report for work on time and in a condition to perform their job properly.

2.    Render full, efficient, and industrious service.

3.    Respond promptly to directions and instructions of supervisor.

4.    Exercise courtesy and tact.

5.    Maintain a clean and neat appearance.

6.    Protect and conserve funds, property, equipment and materials.

7.    Observe all laws, rules and regulations.

8.    Uphold, with integrity, the public's trust involved in their position.

9.    Prevent any abuse of authority attached to the use of a badge that does not relate to a correctional officer performing and executing his/her duties in accordance with Title 14, Code of Alabama 1975, as amended.

10.    Immediately inform and provide a written report to the Warden/Division Director regarding any incident of arrest or conviction of a felony or misdemeanor (except minor traffic violations), arrest/conviction for Driving Under the Influence and any requirement to appear as a defendant in a criminal court.

11.    Obtain prior approval from the Warden/Division Director before becoming financially involved with an inmate.

12.    Promptly report any incidents of sexual misconduct.

13.    Report all instances when the ability to supervise a subordinate employee is affected by a personal and/or non-working relationship with that employee.

14.    Notify the Warden/Division Director immediately and follow the inmate visiting regulations when a family member is incarcerated in the ADOC.

15.    Complete a written report (ADOC Form 302-A, Incident Report) of all unusual incidents that occur during a tour of duty.

16.  Submit to a personal search whenever required by the proper authority. This search may also be extended to the employee's personal property and vehicle located on ADOC owned or state-owned property.

18.  Obtain approval for any absence from work. Tardiness, failure to follow proper call-in procedures, and unexcused absences shall subject the employee to disciplinary action.

19.  Submit to drug testing as required by AR 227, Controlled Substance Testing for Employees of the Alabama Department of Corrections.

20.  Cooperate with investigations to include, but not limited to, providing information or verbal/written statements in connection with employment, investigation, or incident reports.

B.  Each employee's conduct shall, at all times, be consistent with the maintenance of proper security and welfare of the institution and of the inmates under his/her supervision.

C.  Employees shall not:

1.  Report for duty or exercise supervision or control over inmates while under the influence of an intoxicant and/or illegal drug.

2.  Report for duty or exercise supervision or control over inmates while under the influence of a narcotic, barbiturate, hallucinogenic drug, central nervous system stimulant or depressant.  Exceptions may be made only for medications that have been prescribed by and are taken under a doctor's care, and only if such medications do not impair the employee in performing his/her required job duties (the employee's supervisor shall be notified prior to the beginning of the tour of duty in these instances)

3.  While on duty, use or be under the influence of intoxicants or illegal drugs.

4.  Use profane, abusive, or threatening language in communication with other employees, the public, or when supervising inmates.

5.  Abuse inmates in any manner.

6.  Trade, barter, or accept a gift from or give a gift to an inmate an inmate's family, or any other person on behalf of that inmate, or those on parole.

7.  Correspond or fraternize socially with an inmate or an inmate's family, unless approved by the Warden/Director of the employee and of the inmate.

8.  Show partiality toward or become emotionally involved with an Alabama State inmate or parolee.

9.  Take any article or property whatsoever from any institution or from state property not specifically authorized by regulation.

10.  Introduce into any institution or bring upon an ADOC state property any article or property that is not authorized by written directive nor has the approval of the Warden/Division Director.

11.     Recommend or furnish any advice concerning the selection of a specific lawyer for an inmate.

12.     Carry any weapon, chemical agents, or ammunition into the institution or on the grounds of any ADOC state property, except as authorized by the Warden/Division Director.

13.     Have keys to any area of an ADOC facility without authorization.

14.     Abuse sick leave. (Refer to AR 220, Departmental Leave)

15.     Deliberately or carelessly misuse state equipment or supplies resulting in loss or damage.

16.     Disregard ADOC procedures concerning the proper conduct and notification when family members are incarcerated in the Alabama Prison System. (Refer to AR 318, Staff/Inmate Relationships)

17.     Apply physical force to an inmate, except and only to the degree that is reasonably necessary in self-defense, to prevent an escape, to prevent an injury to a person or the destruction of property, to quell a disturbance, or to restrain an inmate who exercises physical resistance to a lawful command. (Refer to AR 327, Use of Force)

18.     Use ADOC owned property or any state-owned property for his/her personal use without the approval of the Commissioner.

19.     Provide any information relative to the ADOC to any source including newspapers, radio, television, or any other source or agency except as directed by ADOC regulations. (Refer to AR 005, Public and Community Relations)

20.     Provide false information, alter an investigation or incident report, and/or intentionally omit facts pertinent to the inquiry.

D.     Security employees, except by the written approval of the ADOC Commissioner, shall be prohibited from engaging in law enforcement or investigative work.

E.     Employees shall be subject to disciplinary action for falsifying or failure to sign documents in connection with the application process, their job duties, performance evaluation, or a departmental requirement.

F.     A security employee shall be subject to dismissal action for the conviction of an offense that disqualifies him/her from employment as a law enforcement officer under the Alabama Peace Officers Standards and Training Commission Rules and Regulations (Title 36, Code of Alabama, 1975).

G.     **Employee Discipline**--Employee discipline shall consist of both formal and informal procedures.

   1. )     A history of all formal corrective actions shall be recorded on ADOC Form 208-A, Corrective Action History Record, for each employee.

2.  Formal corrective actions shall be indicated on the Corrective Action History Record as the date notified by letter from the ADOC Commissioner/Warden/Division Director.

3.  The Corrective Action History Record shall be retained in the employee's 201 file and Institution/Division file as the first (top) record on the left side of the folder in chronological order with the latest date on top.

4.  When implementing or recommending formal discipline, the Warden/Division Director shall consider active and inactive corrective actions received by the employee as indicated below:

    a.  Warning - Only active corrective actions.

    b.  Written Reprimand - Only active corrective actions.

    c.  Suspension - Only active corrective actions.

    d.  Involuntary Demotion - All active and inactive corrective actions.

    e.  Dismissal - All active and inactive corrective actions.

5.  Formal discipline shall be indicated on the employee's Performance Appraisal Form for the rating period in which the action was received as follows:

    a.  A warning shall be indicated for the appropriate non-compliance area in the Work Habits Section and a zero (0) disciplinary score shall be annotated on the form.

    b.  A seven-point (7) disciplinary score shall be deducted from the employee's responsibility score on the appraisal form if a Written Reprimand was received during the rating period.

    c.  A seventeen-point (17) disciplinary score shall be deducted from the employee's responsibility score on the appraisal form if a Suspension was received during the rating period.

    d.  Only a disciplinary score for the highest corrective action that the employee received within a rating period shall be deducted from the responsibility score on the Performance Appraisal Form. Supervisors shall not combine scores for various disciplines.

## H.  Informal Corrective Action--Counseling Session

1.  The Counseling Session, ADOC Form 208-B, is an informal corrective tool that shall be conducted between the supervisor and the subordinate.

AR 208-- June 14, 2005

2. The Warden/Division Director may review the Counseling Session prior to the document being served on the employee.

3. The Counseling Session shall be conducted in a priv te setting without embarrassment to the employee.

4. A record of informal corrective actions shall not be maintained or annotated in the employee's 201 file or the Institution/Division file. A record of informal corrective actions may be retained in a separate file for training purposes and supervisory reference.

5. During the Counseling Session, the supervisor shall provide counseling to the employee, assist the employee in identifying unacceptable behaviors, and offer specific ways or opportunities in which the employee can correct/improve the undesired behavior.

6. The Warden/Division Director may delegate the authority to conduct informal corrective action sessions to subordinate supervisors.

I. **Formal Corrective Action- Warning**

1. The Counseling Session/Warning, ADOC Form 208-B, shall be submitted to the Warden/Division Director for approval prior to being served on the employee.

2. The supervisor shall, along with the Warden/Division Director, serve the Warning in a private setting without embarrassment to the employee.

3. The employee shall be informed of the specific offense and given the opportunity to explain and suggest ways in which his/her behavior can be improved.

4. The employee's response shall be annotated on the form in the designated area.

5. A copy of the completed form shall be given to the employee, a copy placed in the employee's institution/division file, and a copy shall be forwarded to the ADOC Personnel Division for inclusion in the Employee 201 file.

J. **Formal Corrective Action-Written Reprimand**

1. The Warden/Division Director should complete and submit ADOC Form 208-C, Written Reprimand, to the ADOC Personnel Director before the written reprimand is served on the employee. The written reprimand should be filed with the ADOC Personnel Director within ten (10) working days from the date of the incident or at the conclusion of all outside investigations. Upon submission of written justification, an extension of time may be granted, for cause, by the Deputy Commissioners.

2. The ADOC Personnel Division should have twenty (20) working days to review and process the action and forward all documents to the appropriate parties (i.e. Commissioner's designee, Deputy Commissioners, Institutional Coordinator, Division Directors) for review and approval to serve on the employee. The review and approval by the Commissioner's designee, Deputy Commissioners, Institutional Coordinators, and Division Directors shall include ensuring the proposed action is procedurally correct and in accordance with this regulation and within the range of punishment set

8 of 34

out in this regulation. This review and approval does not include the merits or underlying factual allegations of the action.

3.     If the written reprimand stands, the Warden/Division Director shall conduct the written reprimand in a private setting without embarrassment to the employee. The Warden/Division Director shall inform the employee of the specific offense and give the employee an opportunity to respond.

4.     The Warden/Division Director should inform the employee that after receipt of the Written Reprimand the employee has five (5) working days to submit a written rebuttal.

5.     The Warden/Division Director should consider the employee's rebuttal and shall inform the employee in writing whether the written reprimand will stand. If the Warden/Division Director, after reviewing the rebuttal, determines that the written reprimand is unwarranted, the Warden/Division Director shall notify the employee and the ADOC Personnel Director, and the written reprimand shall be expunged from all records.

6.     The written reprimand shall stand if the employee fails to submit a written rebuttal within the allotted five-day (5) working day's timeframe.

7.     A copy of the written reprimand including the employee's rebuttal statement and the Warden/Division Director's response to the rebuttal shall be placed in the employee's institution/division file and a copy shall be forwarded to the ADOC Personnel Division for inclusion in the employee's 201 file.

K.    Formal Corrective Action -Suspension

1.     The maximum number of days an employee can be suspended is twenty (20) working days per infraction. An employee cannot be suspended for more than thirty (30) calendar days per 12-month period.

2.     The Presenting (Charging) Official should submit AR 208 Annex A, Sample Notice of Recommendation for Suspension, through the ADOC Personnel Director for review and concurrence by the appropriate Deputy Commissioner and/or Division Director. The Notice of Recommendation for Suspension should be submitted to the ADOC Personnel Director within ten (10) working days from the date of the incident or at the conclusion of all outside investigation. The review and concurrence by the appropriate Deputy Commissioner and/or Division Director shall include ensuring the proposed action is procedurally correct and in accordance with this regulation and within the range of punishment set out in this regulation. This review and approval does not include the merits or underlying factual allegations of the action. The written notice of suspension must state the charges in sufficient detail to permit the employee to prepare for the hearing.

3.     The ADOC Personnel Division should have twenty (20) working days to review the action and forward all documents to the appropriate parties (i.e. Commissioner's designee, Deputy Commissioners, Institutional Coordinator, Division Directors) for review and approval to serve on the employee. The review and concurrence by the appropriate Deputy Commissioner and/or Division Director shall include ensuring the proposed action is procedurally correct and in accordance with this regulation and within the range of punishment set out in this regulation. This review and approval does not include the merits or underlying factual allegations of the action.

4.   Upon receipt of this information from the ADOC Personnel Division, the Presenting
     (Charging) Official/designee should have three (3) working days to serve the Notice of
     Recommendation for Suspension on the employee unless the employee is not available.

5.   After the employee has been served, he/she will be scheduled for a hearing by the
     ADOC Personnel Division. The employee may elect to waive a hearing, ADOC Form
     208-D, Employee Hearing Waiver, and accept the action recommended by the
     Warden/Division Director, subject to approval by the Commissioner.

     a.   Hearing Officers may include Wardens or other employees designated by the
          ADOC Commissioner. The person designated will conduct a hearing to receive
          information in support of and against the reasons for the suspension. This person
          will evaluate the information and make a recommendation to the Commissioner.

     b.   The hearing will be tape-recorded and the Presenting (Charging) Official shall
          retain the tape for two (2) years for future reference at the Warden/Division
          office.

     c.   The employee may have legal counsel participate at the hearing at their own
          expense, and may call witnesses who have direct knowledge of the
          actions/incidents upon which the charges are based. Employees may also
          present evidence during the hearing.

     d.   The Hearing Officer should, within ten (10) working days following the hearing,
          forward a typed copy of the hearing proceedings to the ADOC Personnel
          Division. The format reflected in AR 208 Annex B, Record of Administrative
          Hearing, shall be followed.

6.   After considering the recommendation of the Presenting (Charging) Official,
     information presented during the hearing, and the findings of the hearing officer, the
     Commissioner may:

     a.   Approve/Disapprove the suspension recommendation of the Charging Official.

     b.   Direct that a different corrective action be taken to include an increase or
          decrease of punishment.

     c.   Direct a new hearing on the matter.

7.   The Commissioner shall render the final decision regarding a suspension
     recommendation.

8.   Upon approval of a suspension, the ADOC Personnel Division shall contact the
     Warden/Division Director for a list of potential suspension dates.

9.   The ADOC Personnel Division will prepare the suspension letter for the
     Commissioner's signature. After the Commissioner has signed the suspension letter, the
     suspension letter will be forwarded to the Warden/Division Director to be served on the
     employee. The letter shall be served to the employee in a private setting.

AR 208-- June 14, 2005

10.    The suspension letter shall be given to the employee, a copy of the letter with the employee's dated signature and acknowledged receipt shall be forwarded to the ADOC Personnel Division and a copy shall be retained in the employee's Institution/Division 201 file.

L.    **Formal Corrective Action-- Involuntary Demotion**

1.    Demotions may occur with the approval of the appointing authority and State Personnel under the following circumstances. Wardens/Division Directors may recommend an employee be demoted after a thorough review of the employee's work history, annual evaluations, and disciplinary actions.

    a.    Employees may voluntarily request a demotion to a lower classification.

    b.    Involuntary demotions may occur during a departmental layoff.

    c.    The appointing authority may direct a demotion to a job classification more comparable to the employee's level of performance. In cases where demotions are directed, the appointing authority may use this action in lieu of dismissal or when it's deemed necessary for the good of the ADOC.

2.    The Warden/Division Director shall submit AR 208 Annex C, Sample Notice of Intent to Recommend Demotion, to the ADOC Personnel Director for review and administrative approval and concurrence by the appropriate Deputy Commissioner and/or Institutional Coordinator. The Notice of Intent to Recommend Demotion should be submitted to the ADOC Personnel Division Director within ten (10) working days from the date of the incident or at the conclusion of all outside investigations. The administrative approval and concurrence by the appropriate Deputy Commissioner and/or Division Director shall include ensuring the proposed action is procedurally correct and in accordance with this regulation and within the range of punishment set out in this regulation. This review and approval does not include the merits or underlying factual allegations of the action.

3.    The ADOC Personnel Division should have twenty (20) working days to review and process the action and forward all documents to the appropriate parties (Commissioner's designee, Deputy Commissioners, Institutional Coordinator, and Division Directors) for review and approval to serve on the employee.

4.    Once the ADOC Personnel Division has received the approval, changes, and/or comment(s) back from the reviewing parties, the ADOC Personnel Division shall email the Presenting (Charging) Official of the approval and/or changes. Upon receipt of this information from the ADOC Personnel Division, the Presenting (Charging) Official shall have three (3) working days to serve the Notice of Intent to Recommend Demotion on the employee unless changes are to be made. If changes are to be made the Warden/Division Director will be advised by the ADOC Personnel Division.

5.    After the employee has been served, the ADOC Personnel Division will schedule him/her for a hearing. The employee may elect to waive a hearing, ADOC Form 208-D, Employee Hearing Waiver, and accept the action recommended by the Warden/Division Director, subject to approval by the Commissioner.

a. Hearing Officers may include Wardens or other employees designated by the ADOC Commissioner.

b. The hearing will be tape-recorded and the Presenting (Charging) Official shall retain the tape for two (2) years for future reference.

c. The employee may have legal counsel participate at the hearing.

d. The Presenting (Charging) Official should, within ten (10) working days following the hearing, forward a typed copy of the hearing proceedings to the ADOC Personnel Division The format reflected in AR 208 Annex B, Record of Administrative Hearing, shall be followed.

e. The Presenting (Charging) Official shall also include a cover letter to the ADOC Commissioner indicating whether or not the recommendation to involuntarily demote the employee stands, or recommends a different course of action.

6. After considering the recommendation of the appropriate Deputy Commissioner, Institutional Coordinator, and the ADOC Personnel Division Director, information presented during the hearing, and the findings of the hearing Warden, the Commissioner may:

   a. Approve/Disapprove the demotion recommendation of the Presenting (Charging) Official.

   b. Direct that a different corrective action be taken to include an increase or decrease of the punishment.

   c. Direct a new hearing on the matter.

7. The Commissioner shall render a departmental decision regarding the intention to demote. This action is subject to the approval of the Director of State Personnel.

8. Upon approval of the demotion, the ADOC Personnel Division will prepare the demotion letter for the Commissioner's signature. After the Commissioner has signed the letter, the demotion letter will be forwarded to the Warden/Division Director to serve on the employee. The letter shall be served to the employee in a private setting. This letter should specifically advise the employee that he/she has a right to appeal this action to the State Personnel Director within ten (10) days.

9. The demotion letter shall be given to the employee, a copy of the letter with the employee's dated signature and acknowledged receipt shall be forwarded to the ADOC Personnel Division and a copy shall be retained in the employee's Institutional/Divisional 201 file.

10. The employee shall be informed of the requirement that the Director of State Personnel reviews and approves demotions. The Director shall make such investigation of the circumstances as he/she may consider necessary and then, not later than ten (10) days after the receipt of the notice of the intention to demote the employee, shall either approve the demotion, approve the transfer of the employee to a position under a jurisdiction of another appointing authority, or order a hearing before the Personnel Board or a hearing examiner to determine the merits of the proposed action.

M.     Formal Corrective Action- Dismissal

1.     The Warden/Division Director shall submit Annex D, Sample Notice of Pre-Dismissal
       Conference, to the ADOC Personnel Division Director for review and administrative
       approval prior to being served on the employee. The Notice of Pre-Dismissal
       Conference letter should be submitted to the ADOC Personnel Director within ten (10)
       working days from the date of the incident or at the conclusion of all outside
       investigations.

2.     The ADOC Personnel Division should have twenty (20) working days to review the
       action and forward all documents to the appropriate parties (Commissioner's designee,
       Deputy Commissioners, Institutional Coordinator, and Division Directors) for review
       and approval to serve on the employee. The review and approval by the appropriate
       Commissioner's designee, Deputy Commissioner, Institutional Coordinator, or Division
       Director shall include ensuring the proposed action is procedurally correct and in
       accordance with this regulation and within the range of punishment set out in this
       regulation. This review and approval does not include the merits or underlying factual
       allegations of the action.

3.     Once the ADOC Personnel Division has received the approval, changes, and/or
       comments back from the reviewing parties, ADOC Personnel shall email the
       Warden/Division Director of the approvals and/or changes. Upon receipt of this
       information from the ADOC Personnel, the Warden/Division Director should have three
       (3) working days to serve the Notice of Pre-Dismissal Conference letter on the
       employee, unless changes are to be made. If changes are to be made the
       Warden/Division Director will be advised by the ADOC Personnel Division.

4.     After the employee has been served, he/she will be scheduled for a pre-dismissal
       conference with the Warden/Division Director. The pre-dismissal conference should be
       held at least five (5) working days after the employee's receipt of the Notice of Pre-
       Dismissal Conference letter. The purpose of this conference is to allow the employee to
       respond to the charges, explaining his/her side of the alleged charges. The employee
       may resign in lieu of attending the pre-dismissal conference (refer to Annex F, Sample
       Resignation from Employment). The discussion is informal. The employee is allowed to
       present written statements of witnesses or any other information with regard to the
       charges. With exception of representation, attendance and participation by persons other
       than recommending officials and employee is at the discretion of the recommending
       official.

5.     The Warden/Division Director should, within three (3) working days, forward the typed
       Annex E, Sample Summary of Pre-Dismissal Conference, and all documents pertaining
       to the conference to the ADOC Personnel Division.

6.     After considering the recommendation of the Warden and the information presented
       during the pre-dismissal conference, the Commissioner may:

       a.     Approve/Disapprove the dismissal recommendation of the Presenting
              (Charging) Official.

       b.     Direct that a different corrective action be taken to include a decrease in the
              punishment.

7.    The Commissioner shall render a departmental decision regarding the intention to dismiss if the employee has permanent status. If the employee is a probationary employee, the Commissioner shall render the final decision on the dismissal.

8.    Upon approval of the dismissal, the ADOC Personnel Division should prepare the dismissal letter for the Commissioner's signature. After the Commissioner has signed the letter, the dismissal letter will be forwarded to the Warden/Division Director to serve on the employee. The letter shall be served to the employee in a private setting.

9.    The dismissal letter shall be given to the employee, a copy of the letter with the employee's dated signature and acknowledged receipt shall be forwarded to the ADOC Personnel Division and a copy shall be retained in the employee's Institution/Division file.

10.   All permanent status employees will be advised, in their dismissal letter, that they should have ten (10) days from receiving written notice of the dismissal to appeal the dismissal before the State Personnel Board.

11.   Under the provisions of Rule of the State Personnel Board, 670-X-18-.02, a permanent employee who has been dismissed may, within ten days after receiving written notice, appeal the dismissal by filing a written answer to the charges with the State Personnel Director, 64 North Union, Montgomery, AL, 36130.

N.    Nothing in this regulation is intended to abrogate authority granted the Commissioner under Section 36-26-27, Code of Alabama, 1975, and 670-X-18-.02, Rules of the State Personnel Board.

O.    The Annex H table, Table of Infractions/Level of Discipline, is intended to promote consistent discipline within the ADOC and guide supervisors at all levels when the imposition of discipline becomes necessary. At times, there are mitigating or aggravating circumstances surrounding the infraction, and as such, the appropriate level of discipline may be increased or decreased in relation to the table. To maintain consistency, the imposition of discipline that does not correspond with the table must be fully justified in writing and submitted to the ADOC Personnel Director who shall confer with the appropriate Deputy Commissioner. The Warden/Division Director requesting this variance shall be notified by the ADOC Personnel Director of the decision.

P.    When the circumstances warrant, and an infraction can be effectively disciplined with informal discipline, a Counseling Session may be substituted in the sections of the table below where a Warning is listed. If the behavior is repeated and there is an active corrective action that was handled via a Counseling Session, the typical course of action would be to impose a Warning.

Q.    If the employee is in a job classification, which allows for an involuntary demotion, a recommendation for an involuntary demotion may be considered as an appropriate level of discipline when mitigating or aggravating circumstances exist.

R.    Job Abandonment – Three (3) consecutive days of unexcused absences where the employee fails to call in or report for duty and there is no supervisory contact with the employee.

      1.    An employee who abandons his/her job shall not be allowed to return to work.

AR 208– June 14, 2005

2.  The Warden/Division Director shall submit Annex G, Sample Job Abandonment Letter, by certified mail (return receipt requested) to the employee.

3.  If the employee does not respond within seven (7) calendar days, the Warden/Division Director shall notify the ADOC Personnel Director and submit substantiating documentation.

4.  The ADOC Personnel Director shall prepare a letter of dismissal and forward it through channels for approval/signature by the Commissioner.

## VI.   DISPOSITION

Any forms will be disposed of and retained according to the Departmental Records Disposition Authority (RDA).

## VII.   FORMS

A.   ADOC Form 208-A, Corrective Action History Record

B.   ADOC Form 208-B, Counseling Session/Warning

C.   ADOC Form 208-C, Written Reprimand

D.   ADOC Form 208-D, Employee Hearing Waiver

## VIII.   SUPERCEDES

This regulation supercedes AR 208, dated July 26, 2000, and AR 207, dated May 11, 2004, and all changes thereafter. The portion of ADOC AR 220, Departmental Leave Policy, describing levels of discipline for tardiness and unexcused absences was also placed in this AR.

## IX.   PERFORMANCE

This administrative regulation updates departmental policies and procedures pertaining to employee discipline and is based on, but not limited to, the interpretation and application of the regulations and laws, as amended below.

A.   Code of Alabama, 1975, Title 36 and Title 14-11-30, as amended

B.   Rules of the State Personnel Board

C.   ADOC Administrative Regulations 005, 206, 217, 220, 227, 228, 318, and 327.

Donal Campbell, Commissioner

**ANNEX(S):**

Annex A – Sample: Notice of Recommendation for Suspension

James William Sales    S-18
278544, 100 Warrior Lane
Bessemer, Al, 35023

...ingham, AL PADC 352—
07 AUG 2020    PM

SECU

AUG 10 2020

U.S. DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

North District of Alabama

Room 140, Hugo L. Black U.S
Court house, 1729 5th Avenue
North, Birmingham, Al, 35203-2195

"This correspondence is forwarded
from an Alabama State Prison. The contents
have not been evaluated; and the Alabama
Department of Corrections is not responsible
for the substance or content of the enclosed
communication."